(Judge Burrows of the seventh circuit taking the place of Judge Marvin.)

### JAMES D. GAWN v. THE STATE OF OHIO.

**1. THREATS MADE BY DEFENDANT.**

If, after the commission of an offense, threats are made by the defendant against the prosecuting attorney of the county, evidence of such alleged threats are not admissible, unless it appears that they were made under such circumstances and are of such character as to manifest a consciousness of guilt.

**2. BURDEN OF PROOF AS TO ALIBI.**

*a.* Where proof of the presence of the defendant, at the time and place of the commission of an offense, is requisite to sustain a conviction, a charge to the jury, which in terms or by implication, puts upon the defendant the burden of showing that he was not present at such time and place, is misleading and erroneous.

*b.* It is also error, in such case, to charge the jury that an alibi is a defense set up by the defendant, which can only be satisfactorily maintained by proof which renders it impossible that he could have committed the act.

**3. MISCONDUCT OF PROSECUTING ATTORNEY.**

*a.* When the natural and probable effect of an improper address to the jury by the prosecuting attorney, is to create an unjust prejudice against the defendant, and secure a decision influenced by the prejudice so created, a new trial should be granted.

*b.* The neglect of counsel for defendant to make objection to such misconduct at the time, will not preclude its consideration upon a motion for a new trial, where its prejudicial effect could not have been prevented thereby.

BURROWS, J.

The plaintiff in error was convicted in the court below of the crime of arson. The indictment alleged that he set fire to, and attempted to burn school house No. 3 in Amherst township on the 6th day of October, 1895, and in the second count alleges, that he set fire to and burned

down this building on the 10th day of the same month. His motion for a new trial was overruled and a bill of exceptions taken embodying all the evidence and proceedings.

It is now claimed that this judgment of conviction should be reversed for errors assigned upon the record.

1. Objection was made to the introduction of any evidence on the part of the state upon the ground that the indictment did not charge an offense. That there was a fatal misnomer or mis-description as to the ownership of the property. That there was and could be no such body corporate as "The Board of Education of Amherst Township," but that the only legal designation of that body was "The Board of Education of the township district of Amherst.

What merit, if any, there might be in this contention, in the absence of any statutory direction, it is unnecessary to inquire. The statute of this state, section 7216, makes such defect unimportant, "unless the court before which the trial is had, finds that such variance is material to the merits of the case, or may be prejudicial to the defendant."

The trial court did not find such variance material or that the defendant might be prejudiced thereby.

We are of opinion that the ruling of the court in this regard was correct.

2. The state was permitted to put in evidence the fact that certain tin cans, which had the smell of coal oil about them, and which had been used presumably in starting the fire on the night of the 6th of October, were found in and about the building on the morning of October 7th.

It was and is contended that this was incompetent, inasmuch as the state had not shown and did not propose to show that the prisoner owned the cans or ever had any connection with them.

After all of the evidence was submitted, the court was requested to instruct the jury to disregard this evidence, unless they first found that the defendant was in some way connected with the ownership or possession of these cans.

We think there was no error in the admission of this evidence or in the refusal of the request.

The burden rested upon the state to prove that this fire was of incendiary origin; that this building was set on fire intentionally with the malicious purpose to destroy it; and in our opinion this evidence was proper and persuasive in the determination of that question.

3. Evidence was given by the state that the accused made certain declarations to the sheriff tending to show that he entertained hostile feelings towards the prosecuting attorney.

The indictment in this case was found at the May term, 1896, and these declarations were made during the preceding February term.

Prior thereto there were rumors afloat imputing to the accused the destruction of this building, and he had employed a detective from Cleveland to assist him in ascertaining who had put such rumors in circulation, with the view of prosecuting civil actions for slander. The detective obtained statements and affidavits from various parties, and visited the prosecuting attorney and by false pretenses obtained from his office some tin cans and other articles which had been left there by persons who suspected the accused of this crime.

At the February term 1896, the conduct of the detective was investigated before the grand jury, and a subpœna *duces tecum* was served upon

the accused, requiring him to attend as a witness and bring with him the said articles obtained by the detective, as well as the statements and affidavits taken by him. It was during these proceedings before the grand jury, or soon thereafter, and in relation thereto that the declarations were made.

The sheriff testified to two conversations. The material part of the first, which was excepted to, is as follows:

Q. "What did he say at the time, if anything, about the prosecuting attorney?" Objected to by defendant.

The court: "If it has reference to this case now on trial he may state it; if it has reference to some other matter I do not think it is competent."

Mr. Thomas: "It has reference to this matter."

A. "Is it necessary to use the language?" Q. "Yes, sir." Exception by defendant. A. "Must I use the exact language" Q. "Yes, sir." A. "He said, 'If the son of a bitch of a prosecutor does not keep his hands off from me, I will land him in the penitentiary.'"

The material part of the second conversation excepted to is as follows: Q. "I will ask you where that conversation was?" A. "On the other side of this room." Q. "What did he say at that time?" Objected to by defendant.

The court: "If it is in the line I have indicated he may answer."

Mr. Thomas: "It is." Exception by defendant.

A. "I do not think I can recollect the entire conversation. It was in relation to the arrest that had been made of a party in Cleveland. Without trying to use his exact words, because I do not recollect them exactly, the turn of the conversation was, that the prosecutor and the sheriff had used unfair methods toward him in securing his witnesses, they had tampered with him, and in some other conversation, that the prosecutor would find himself in a tight fix before he got through with this if he did not look out."

The motion of the defendant to exclude this answer was overruled and exception taken.

This evidence was made to play a somewhat important part in the case. In his address to the jury the prosecuting attorney assumed that the accused was attempting, by these alleged threats, to intimidate the public prosecutor and thereby prevent a prosecution of this case. The jury were told that the prosecuting attorney had fearlessly discharged his public duties in this matter, and would continue to do so regardless of personal consequences.

It is important to determine the precise ground upon which the admissibility of this class of evidence can be placed.

The only ground as we believe upon which it can stand is, that the declarations were of such a character and made under such circumstances, as to indicate a consciousness of guilt in the mind of the accused, as to the charge under investigation. If a person suspected of crime undertakes to obstruct a full investigation as to his guilt by the destruction of evidence, or attempts by intimidation to deter the public prosecutor from doing his full duty in the matter, the inference naturally arises that such conduct is to be attributed to a consciousness of guilt.

When we look to the circumstances under which these declarations were made we find that no prosecution was then pending and that the accused did not then anticipate that he was to be prosecuted; but, on the contrary, was making vigorous and perhaps unfortunate efforts to hunt

down the rumors against him with a view of having a public investigation as to their truth or falsity.

It does not appear that the prosecuting attorney had theretofore taken any active interest against the accused; but it does appear that he had, just prior to the making of these alleged threats, been attempting to procure an indictment against the detective, and for that purpose had caused the accused to bring before the grand jury the articles and documents procured by the detective.

It would seem to be reasonably certain from these circumstances as well as from the testimony of the sheriff, that the hostility expressed by the accused towards the prosecuting attorney, arose solely out of this attempt to indict the detective and the means used to accomplish that purpose; and that the accused did not contemplate by these alleged threats any obstruction of a prosecution against himself.

We are, therefore, of opinion that the evidence did not tend to show consciousness of guilt and was incompetent, and its admission prejudicial error.

,4. Exception is also taken to the charge of the court upon the question of *alibi.* The charge is as follows:

"Now, gentlemen of the jury, the defendant in this case, besides denying all the allegations of the indictment herein, says that even though you find from the evidence that a crime was committed as charged in the indictment, that he did not commit it."

"The defendant, besides denying the commission of the offense, says that at the time the building is alleged to have been set on fire he was at another and different place."

"This defense in law is termed an *alibi.* I will now explain to you what is meant by an *alibi*, and instruct you upon the law in relation to the same."

"*Alibi* is a Latin word, signifying elsewhere, and in law means a defense interposed by the defendant by which he seeks to prove that at the time of the commission of the offense he was at some other place than where it was committed."

"It is obviously essential to the satisfactory proof of an *alibi* that it cover the whole of the time of the transaction in question, or so much thereof as to render it impossible that the defendant could have committed the act."

"An *alibi* is a legitimate and proper defense to make, and if satisfactorily made, is conclusive."

"It would be proper for you to consider in determining this case whether the parties who have testified to seeing the defendant in his office on the night of October 10, 1895, have fixed such a time as to preclude all possibility or probability of the defendant being at the place of the alleged burning of the building."

This charge is, in our opinion, misleading and erroneous. It is not in conformity with the decision of the supreme court in *Walters* v. *The State*, 39 O. S., 215. In that case the trial judge charged the jury, in substance, that the defendant had interposed the defense of *alibi*, but was not required to establish the same by proof beyond reasonable doubt, but only by a preponderance of the evidence, to entitle him to an acquittal.

Okey, Judge, in reviewing this charge, at page 217, says: "We hold this charge to be erroneous. It is, in effect, that evidence tending to show such *alibi* is not to be considered in favor of the defendant unless it outweighs all of the evidence in opposition to it. We think it was the

duty of the trial judge to have said to the jury that they must consider all of the evidence in the case, including that relating to the *alibi*, and determine from the whole evidence whether it was shown beyond reasonable doubt that the defendant had committed the crime with which he was charged. The burden of proof was not changed when the defendant undertook to prove an *alibi*, and if, by reason of the evidence in relation to such *alibi*, the jury should doubt the defendant's guilt, he would be entitled to an acquittal, although the jury might not be able to say that the *alibi* was fully proved."

In like manner and with greater clearness, the instructions in this case put upon the accused the burden of proving the *alibi*, and inferentially, at least, deprived him of all benefit arising from such proof unless this alleged defense was fuly and incontestably established.

The jury is instructed that the defendant interposes this defense and seeks thereby to prove that he was at some other place than the place of the crime at the time it was committed; that it is a proper defense to make and when satisfactorily made is conclusive; and that it is essential, to the satisfactory proof of such defense, that it cover the whole time of the transaction in question, or so much thereof, as to render it impossible that the defendant could have committed the act.

The court proceeded to make more specific application of the same rule when he charged the jury, to consider whether the parties who testified to seeing the defendant in his office on the night of October 10, 1895, fixed such a time as to preclude all possibility or probability of the defendant being at the place of the crime at the time it was committed.

These instructions gave the accused the benefit of such defense when it was proved satisfactorily or conclusively; and left the jury to infer that when it was not so proved the defense failed, and that the evidence tending to establish it was to be disregarded.

The theory of the State was that the accused set these fires with his own hand; no other suggestion is found in the record. It was, therefore, necessary for the state to prove, as part of its case, that the defendant was at the building at the times it was fired.

His whereabouts was not a matter of defense, and any proof of the accused that he was elsewhere at the time was competent and appropriate to weaken or destroy the force of the proof, which the State was bound to bring forward to sustain its case.

The defendant, in a criminal cause, is not required to prove his innocence; but would be so required if, as in this case, when the main issue in dispute was whether he was present at the crime, he was compelled to maintain that he was not, and by proof so conclusive as to render his presence improbable and impossible

Though it may be said, with fair show of reason, that when the whole charge is considered, it did not necessarily deprive the defendant of the benefit of any doubt which might be produced by his evidence of an *alibi*, yet we are unable to rid our minds of the conviction that its tendency and effect wer decidedly in that direction.

5. The misconduct of the jury is also assigned as error. The affidavits presented by the defendant in support of his motion for a new trial show that the juror, Cooley, discussed the merits of the case pretty freely during the progress of the trial. That he stated, among other things, to one affiant, that the State was making a strong case, and to another, that the State had made a strong case, and that the defendent was making a strong case. Had these facts been admitted a new trial

must necessarily have been granted, but the juror not only denied this by his affidavit, but other affidavits were presented by the State tending to corroborate the denial of the juror.

The only doubt about the question grows out of the admission of the juror himself in his affidavit, that he only said, "that the State was trying the case very close and the defendant was trying it very close." This comes very close to being an expression of "an opinion upon the subject of the trial"; but, in consideration of this conflict of evidence, and the impartial character of the admitted statement of the juror, we are unable to say that the motion for a new trial on this ground was improperly overruled.

6. Again, it is claimed that there was misconduct on the part of the prosecuting attorney and his assistant "by which the defendant was prevented from having a fair trial."

In support of the motion for a new trial on this ground, the affidavit of a stenographer is presented, setting out and verifying what is claimed to be a verbatim report of a large portion of the address of the prosecuting attorney to the jury. It appears from this report that the prosecuting attorney bore testimony against the defendant most vigorously; that he repeatedly addressed his remarks to the prisoner and denounced him in no uncertain terms, saying to him, "you are a thief, you set fire to that building, you are a guilty man." That in conclusion he said to the jury: "Gentlemen, I have never known a clearer case of circumstantial evidence, and if this man were a tramp it would be sufficient to hang him. It is as clear a case of circumstances as you will ever find if you sit upon the jury from now 'till the crack of doom."

Affidavits were also presented showing that the attorney assisting in the prosecution, closed his address with substantially this statement "Gentlemen I want to say to you if you let this man go acquit, then he will proceed to extract blood money from these witnesses and carry on these suits."

It was in evidence that suits for slander were then pending or in contemplation against some of the witnesses for the State.

If we were to dispose of this matter upon the proof made by the defendant and that only, we should be disposed to hold that such conduct on the part of the prosecuting officers was prejudicial error. That its natural if not necessary effect, was to excite passion and prejudice and lead to a decision influenced by the prejudice so created, rather than one arrived at solely upon a careful and unbiased consideration of the real facts in evidence.

Many of these remarks were not objected to when made nor was the court asked to take any action in relation to them. This, we believe, is not always essential. When improper remarks are made to the jury, and it is apparent that an objection thereto would afford no redress, but only aggravate their injurious effect, the absence of objection at the time, under such circumstances, ought not to preclude their consideration upon a motion for a new trial.

Counsel for the state contend, however, that the affidavits offered by them tend to disprove their alleged misconduct.

The prosecuting attorney in his affidavit says that the remarks attributed to him were materially qualified and modified in that portion of his address not reported by the stenographer, while his assistant in his affidavit makes a technical denial of having used substantially the language imputed to him.

In view of this possible dispute and uncertainty as to the facts, and especially in consideration of the full knowledge thereof possessed by the trial court, the overruling of the motion for a new trial on this ground is held not to be manifestly erroneous by the majority of the court.

7. It is also contended that the verdict is not supported by sufficient evidence. This assignment of error has commanded the serious attention of counsel and the court. It has been fully and ably argued, and we have given much time to its consideration. While the record is voluminous, there are, after all, only a few decisive facts relied upon by either party.

The larger part of this large record is devoted to evidence of declarations and conduct of the accused, covering a wide range of transactions, both before and after the building was burned, the main bearing of which was to show that the defendant would be benefited by its destruction, and, therefore, had a motive for destroying it.

He was an architect and had, theretofore, furnished plans and estimates for school houses in this township. The profit to him in each case, as estimated, was about fifty dollars.

School house No. 6 was antiquated and not up to the requirements of the times. It was a matter of frequent remark in this sub-district that its destruction would be a public blessing, and such remarks had been made in the hearing of the defendant.

After its destruction the defendant immediately applied for the job of furnishing plans and estimates for a new building. He persistently pursued the different members of the board of education and urged the immediate erection of a new school house, and furnished arguments and statements, verbal and written, showing the economy of speedy action.

Afterwards, while a room in a private dwelling was being used for a school room, he officiously undertook to show its inappropriateness for this purpose and brought the matter to the attention of the State Board of Health.

All this was done, apparently, for the purpose of compelling the board of education to build a new school house at once. His officiousness was encouraged by certain parties who suspected him of burning the old school house. When he learned that he was suspected of this crime he directed all his energies to the removal of such suspicion. He employed an alleged detective to ferret out the authors of his disgrace, while he undertook to remove such suspicion by arguments, explanations and denunciations.

The history of all these conversations and transactions is brought into this record to show motive.

The proper part that evidence of motive may be made to play, in a criminal trial, is to remove the uncertainty arising from the want of such evidence. Its importance for this purpose is unquestioned, especially when, as in this case, the state must rely upon circumstantial evidence alone; but it cannot be used as affirmative proof that this building was set on fire by the defendant.

Because of the assumption, that all responsible human action is voluntary, and is caused and guided by self-interest, the question of motive necessarily forces itself upon the mind in the investigation of every alleged criminal act.

It is only, however, when such act is established by other evidence that the question of motive can be appealed to, to give corroboration and assurance to the conclusions drawn from other evidential facts.

We must then turn our attention to the consideration of the material evidentiary facts of the case.

It is fully established that on the 6th day of October the defendant was familiar with the school house and knew, or might have known, that there was no fastening on the southwest window; that this window was opened and the fire set in that part of the building; that numerous tracks of a three-quarter buggy, drawn by a horse having a small foot and wearing plate shoes, were found on the following morning in the road near the school house, indicating that the horse had been turned partially out of the travelled part of the road opposite this window; that these tracks were similar to those made by the defendant's buggy, and that his horse had small feet and wore plate shoes at the time.

Evidence was given tending to show that the defendant was seen and identified near the school house at about the hour of nine o'clock on this evening, driving to the south at a rapid pace, and that a light was discovered in the school house at about this time, or soon thereafter.

As to the transaction on the evening of October 10th, it is proved that the school-house was discovered to be on fire at twenty minutes past ten o'clock, sun time; that the tracks of a horse and buggy, similar to those found on the morning of the 7th, were discovered in the road coming towards the school-house from the south, and then going west. Evidence was given tending to show that the horse and buggy of the defendant were absent from the livery stable, where they were kept, during all of this evening, and that the defendant did not return with them until ten o'clock or after.

On the part of the defendant it is shown that up to the time of the making of this charge he had sustained a good reputation for honesty and integrity; that upon the night of October 10th, he was transacting business with various parties, at his office in the city of Elyria, until the hour of 9:30, sun time; evidence was also given, that this school house was located west of the city of Elyria and three miles from his office.

Evidence was also given on his part, tending to show that he was at home, in the city of Elyria, all of the evening of October 6th, and that he remained in his office on the evening of October 10th, 'till ten o' clock, sun time.

This, in brief, is the whole case. The force of some of these circumstances is weakened, if not wholly destroyed, by other undisputed facts. The tracks of a three-quarter buggy was a circumstance of little, if any, probative force against the accused; as many vehicles of that kind were shown to have been in use at that time in that vicinity. It is also a conceded fact that the defendant passed this school house with his horse and buggy late on that afternoon of October 6th.

There was a like infirmity of inconclusiveness as to the tracks of the horse. There was nothing uncommon about the shoes of the horse, in size or otherwise.

These circumstances lack the essential elements required to make them incriminative. They are perhaps consistent with guilt but are in no wise incompatible with innocence.

If the defendant visited this neighborhood at about the time the fire was set on the evening of the 6th, his presence there, in connection with his testimony that he was then in Elyria, would raise a strong presumption of guilt.

The witness, Ann Reiering, says that she heard the sound of a rapidly approaching carriage, while she was on her way to her home from a

Gawn v. The State of Ohio.

neighbor's, at about nine o'clock of that evening, and stepped aside 'till the carriage passed; that the top of the carriage was down and that the speed of the horse was somewhat slackened as it passed; that she recognized the defendant and the rig, and also observed that he had on a dark suit of clothes and a dark stiff hat.

The jury must have given full credence to this story, as it is the only testimony which could have convinced them that the defendant was guilty of this charge.

We think her testimony was not entitled to full credit. It was a dark night, so dark that she did not see the carriage 'till it was close upon her, and learned it from the noise of its approach. Her daughter, who was with her at the time, says that she could not tell who was in the carriage because it was so dark.

That any one could tell the color of clothes under such circumstances is impossible. At best, it could only have been the opinion or conjecture of the witness, Ann Refering, that she saw the defendant on that night; and when she first began to entertain that opinion is left in uncertainty by the record.

The material circumstance to sustain the charge made on the 10th of October is the alleged fact that the defendant's horse and buggy were taken out of the livery barn early in the evening and not returned by the defendant 'till ten o'clock or somewhat later. This claim is supported by the testimony of two witnesses. The witness, Bivens, the owner of the stable, says he was about there until about nine o'clock, and that the horse had not been brought in at that time. Upon cross-examination he admits that there was nothing to call his attention especially to this matter at the time, and we are satisfied that it was, with him, only a matter of the most shadowy impression. Indeed, the record discloses the fact, that some days after the 10th, he inquired of Worden, the man in charge of the stable, whether "Gawn s horse was out late that night."

The witness, Worden, was working at this stable; and he says that it was ten o'clock or later before the horse was brought in. He also says that there was nothing about this circumstance to attract his attention at the time, and that he only fixed the date by figuring back, sometime afterwards. He was unable to fix other times when this horse, or other horses, were out during an evening, as it was a matter of common occurrence and of no consequence.

The time when the fire was discovered, on the 10th, by the witness, Osman, is fixed with as much certainty as any other fact in the case, as being at 10:20 P. M., sun time. He testifies that he then went to the school house, some quarter of a mile away, and found a small fire in the front part of the building. That there was nothing to indicate how long it had been in progress, and that it was burning very slowly at that time.

It may be possible that the defendant could have left his office at 9:30 sun time and have traveled by some indirect route so as to have approached this building from the south, have set this fire, and then have gone to the west, and yet have returned to the livery stable at ten o'clock or soon thereafter; but in the light afforded by this record it is extremely improbable.

We are fully convinced that the verdict was not warranted by the evidence.

All assignments of error not commented upon are overruled. The

judgment in this case is reversed and the cause remanded for further proceedings.

*E. G. Johnson, Judge Blandin* and *H. G. Reddington*, for Plaintiff in Error.

*F. F. Thomas*, Prosecuting Attorney, and *A. R. Webber*, for Defendant in Error.